BRYAN CAVE LLP
H. Mark Mersel, CSB No. 130382
  mark.mersel@bryancave.com
Sheri Kanesaka, CSB No. 240053
  sheri.kanesaka@bryancave.com
3161 Michelson Drive, Suite 1500
Irvine, California 92612-4414
Telephone:  (949) 223-7000
Facsimile:   (949) 223-7100

Attorneys for Secured Creditor
CSMC 2006-C5 AZUSA AVENUE LIMITED PARTNERSHIP and
CSMC 2006-C5 BARRANCA STREET LIMITED PARTNERSHIP

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>HASSEN REAL ESTATE PARTNERSHIP,<br>a California limited partnership,<br><br>EASTLAND TOWER PARTNERSHIP,<br>a California limited partnership,<br><br>　　　Debtors and Debtors-in-possession.<br><br>Tax I.D. Nos. 95-3970215 and 95-3970217 | Case Nos.:<br><br>2:11-bk-25499-ER and<br>2:11-bk-25500-ER<br><br>Chapter 11<br><br>**DECLARATION OF DMITRY SULSKY IN SUPPORT OF SECURED CREDITORS' OPPOSITION TO DEBTOR'S EMERGENCY MOTION FOR ORDERS (1) AUTHORIZING INTERIM USE OF CASH COLLATERAL; (2) SCHEDULING AND ESTABLISHING DEADLINES RELATING TO A FINAL HEARING; (3) AUTHORIZING CONTINUED USE OF CASH COLLATERAL; AND (4) COMPELLING RELEASE OF ESTATE FUNDS FROM DEBTOR'S PR-PETITION DEPOSIT ACCOUNTS**<br><br>[*Opposition filed concurrently herewith*]<br><br>Date:   April 18, 2011<br>Time:  11:00 a.m.<br>Place:  Courtroom 1568 |

IR01DOCS484913

1

DECL. SULSKY ISO OPPOSITION TO EM. MTN RE
USE OF CASH COLLATERAL

I, DMITRY SULSKY, declare as follows:

1. I am an Asset Manager for LNR Partners LLC, the special servicer with respect to the Loans made to Hassen Real Estate Partnership ("Hassen") and Eastland Tower Partnership ("Eastland") (collectively, the "Debtors"), and held by Secured Creditors CSMC 2006-C5 Azusa Avenue Limited Partnership ("Azusa") and CSMC 2006-C5 Barranca Street Limited Partnership ("Barranca") (collectively, "Lenders"), respectively. The facts contained herein are true based on my personal knowledge, and if called upon as a witness in this case, I could and would testify competently to the truth thereof.

2. I have access to the books and records of Lenders pertaining to the subject Loans, and I am familiar with the transactions reflected thereby. I make this Declaration based upon the information contained in the business records of the Lenders. The records and other documents in the files of the Lenders constitute writings made in the regular and ordinary course of business, at or near the time of the event, or act, of which they are a record.

3. I make this declaration in support of the Lenders' Opposition to the Emergency Motion for Orders (1) Authorizing Interim Use of Cash Collateral, (2) Scheduling and Establishing Deadlines Relating to a Final Hearing, (3) Authorizing Continued Use of Lender's Cash Collateral ("Cash Collateral"), and (4) Compelling Release of Estate Funds from Debtor's Pre-Petition Deposit Accounts ("Motion") filed by the Debtors.[1]

A. **The Hassen Loan and Defaults.**

4. On or about November 21, 2006, Hassen, a California limited liability company, borrowed the principal amount of $41,000,000.00 ("Hassen Loan") from Column Financial, Inc. ("Original Lender").

---

[1] The Lenders reserve their objections that these cases do not qualify for joint administration, as explained in the Lender's opposition to the ex parte motion for joint administration which they filed on April 11, 2011.

IR01DOCS484913

2

DECL. SULSKY ISO OPPOSITION TO EM. MTN RE
USE OF CASH COLLATERAL

5.    The Hassen Loan is evidenced by, among other things, a promissory note ("Hassen Note") dated November 21, 2006, and executed by Hassen Real Estate Corporation, a California corporation ("Hassen Corp."), as the general partner of Hassen.

6.    The Hassen Note is secured by, among other things, that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing ("Hassen Deed of Trust") dated November 19, 2006, executed by Hassen Corp. as the general partner of Hassen, for the benefit of the Original Lender. The Hassen Deed of Trust encumbers real property commonly known as 310 North Azusa Avenue, West Covina, California ("Hassen Property"), in the Los Angeles County Recorder's Office on November 27, 2006 as Document Number 06-2606929.

7.    The Hassen Note is also secured by that certain Assignment of Leases and Rents ("Hassen Assignment of Rents") dated November 19, 2006, executed by Hassen Corp. as the general partner of Hassen, for the benefit of the Original Lender, and recorded against the Hassen Property in the Los Angeles County Recorder's Office on November 27, 2006, as Document Number 06-2606930.

8.    Original Lender also perfected its interests in Hassen's personal property pursuant to filing a UCC-1 financing statement ("Hassen UCC") (collectively with all other loan documents, the "Hassen Loan Documents").

9.    Pursuant to allonges to the Hassen Note and assignment deeds of trust, Azusa is the current owner and holder of the Hassen Loan Documents.

10.    Since April 11, 2009, the Hassen Loan has been in payment default, and the indebtedness now totals more that $48.6 million.

11.    Pursuant to Azusa's last appraisal of the Hassen Property, a true and correct copy of which is attached hereto as Exhibit 2, the "As Is" value is $36 million. Accordingly, the Hassen Loan is undersecured by at least $12,600,000.00.

**B.**    **The Eastland Loan and Defaults.**

12.    On or about November 21, 2006, Eastland borrowed the principal amount of $41,000,000.00 ("Eastland Loan") from Original Lender.

13.     The Eastland Loan is evidenced by, among other things, a promissory note ("Eastland Note") dated November 21, 2006, and executed by Hassen Eastland Corporation, a California corporation ("Eastland Corp."), as the general partner of Eastland.

14.     The Eastland Note is secured by, among other things, that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing ("Eastland Deed of Trust") dated November 19, 2006, executed by Eastland Corp. as the general partner of Eastland, for the benefit of the Original Lender. The Eastland Deed of Trust encumbers real property commonly known as 100 North Barranca, West Covina, California ("Eastland Property," and together with the Hassen Property, the "Properties"), in the Los Angeles County Recorder's Office on November 27, 2006 as Document Number 06-2606918.

15.     The Eastland Note is also secured by, among other things, that certain Assignment of Leases and Rents ("Eastland Assignment of Rents") dated November 19, 2006, executed by Eastland Corp. as the general partner of Eastland, for the benefit of the Original Lender, and recorded against the Eastland Property in the Los Angeles County Recorder's Office on November 27, 2006, as Document Number 06-2606920.

16.     Original Lender also perfected its interests in Hassen's personal property pursuant to filing a UCC-1 financing statement ("Eastland UCC") (collectively with all other loan documents, the "Eastland Loan Documents").

17.     Pursuant to allonges to the Eastland Note and assignment deeds of trust, a different entity from Lender, Barranca, is the current owner and holder of the Eastland Loan Documents.

18.     Since April 11, 2009, the Eastland Loan has been in payment default, and the indebtedness now totals more that $50.5 million.

19.     Pursuant to Barranca's last appraisal of the Eastland Property, a true and correct copy of which is attached hereto as Exhibit 3, the "As Is" value is $33 million. Accordingly, the Eastland Loan is undersecured by at least $17,500,000.00.

IR01DOCS484913

4

DECL. SULSKY ISO OPPOSITION TO EM. MTN RE
USE OF CASH COLLATERAL

### C. Other Relevant Facts.

20. The Hassen Property and the Eastland Property are two separate and distinct commercial properties, one a retail center, and one an office tower, in West Covina, California.

21. The Debtors have been in default under the secured Loans for more than two years, since April, 2009.

22. The Lenders were set to complete their nonjudicial foreclosure sales almost one year ago, when the Lenders agreed to forbear from exercising their foreclosure remedies and attempt to consummate a loan work out that the Debtors had proposed. Accordingly, the parties entered into the Forbearance Agreement in June, 2010 ("Forbearance Agreement"), pursuant to which, among other things, a cash management procedure was established. The Lenders collected the rents from the collateral and disbursed funds to the Debtors to pay necessary expenses of the properties (the "Necessary Expenses"). The excess cash over the Necessary Expenses was used to fund property tax and insurance reserves and to pay as much of the Lender's debt service as possible. A true and correct copy of the Forbearance Agreement is attached hereto and incorporated herein by reference as Exhibit 1.

23. Within the last 30 days, the Debtors informed the Lenders that they could not consummate the settlement that the parties had agreed to and were in the process of documenting. Accordingly, the Lenders were compelled to end the forbearance period after almost one year and re-schedule the foreclosure sales. On the eve of the foreclosure sales, the Debtors filed bankruptcy.

24. The budgets the Debtors have submitted with the Motion significantly differ from the budgets used for the Forbearance Agreement.

25. For example, pursuant to the budgets provided by the Debtors in June 2010 which have been applied for the past year, the Debtors show Hassen's total collected base rental revenue for three months as $822,711.00. However, pursuant to Exhibit 1 to the Motion, the Debtors list such amount for three months as $753,018.00. Other amounts

also do not align, such as the payroll taxes increase from $6,660.00 in the June 2010 budgets to $10,000.00 in the Motion budgets even though the salaries and wages are listed as lower in the Motion budgets. Thus, it appears that the value of Lender's collateral is actually declining.

26. During the forbearance period, the Debtor in Hassen has been requesting an average of $40,000 per month to cover salaries, wages, workers comp, payroll taxes and management fees at this property. The Debtor is now requesting in excess of $50,000 per month to fund the same expense categories. After thorough review, the Lenders believe that the previously funded $40,000 monthly average is even excessive. It appears that the above market expenses are due to the fact that the property is being charged not only a management fee, but also the salaries of the individuals that work for HDC. The standard for retail centers is to pay a management fee equal to a percentage of effective gross revenue plus reimbursement of hard costs incurred by the management company. There is no need to have on-site personnel at a shopping center, as the management company sends their own staff to handle periodic issues or contracts specific vendors. Occasionally, very large retail centers will have one maintenance worker remain on sight to handle daily repairs. The recent appraisal completed for this property shows no budgeted amounts for on-site personnel and only a flat 3% management fee. The Lenders would be willing to consent to a management fee of 3% of EGI (they budgeted 3.5%) plus the salary of one on-site maintenance person, with salary not to exceed $4,167 per month ($50,000 per year)

27. The Debtor in Eastland has been requesting an average of $70-75K per month to cover salaries, wages, workers comp, payroll, payroll taxes and management fees at this property. Per the budget from the Debtor, they are now requesting in excess of $95-110K per month to fund the same expense categories. As with Hassen, the Lenders also believe that the previously funded amounts for this property are excessive. The Lenders acknowledge that office buildings to require more on-site staff than retail centers, however, this property appears to have the same issue of funding management company salaries from the property cash flow, which is not acceptable. As previously stated, neither of

IR01DOCS484913

6

DECL. SULSKY ISO OPPOSITION TO EM. MTN RE
USE OF CASH COLLATERAL

1  these properties should be paying the salaries of the officers of the management company.
2  The Lenders are willing to consent to budgeted amounts equivalent with the appraiser's
3  estimates (attached), which include a management fee of 2.5% of EGI (they budgeted 4%),
4  approximately $24,000 per month for janitorial and security, plus salary of one on-site
5  maintenance person, with salary not to exceed $4,167 per month ($50,000 per year).

6      28.    In sum, the Lenders do not object to the use of their Cash Collateral for the
7  *actual* amounts of certain expenses which are necessary to protect and preserve the
8  Properties, such as utilities, insurance, and to certain non-affiliated third parties who
9  provide needed support to the Properties ("Necessary Expenses"). However, the Lender
10 objects to the Debtors attempt to (1) deprive the Lenders of payment any monthly debt
11 service and the funding of property tax and insurance escrows that have been the case
12 since the Forbearance Agreement, (2) substantially increase cash collateral spending above
13 the Necessary Expenses that they have been paying during the lengthy forbearance period,
14 and (3) pay insider / affiliate personnel more than standard market rate payments for
15 property management and maintenance.

16     29.    In addition, the Debtors are seeking turnover of certain reserve accounts that
17 are held by the Lender that are set up to pay various expenses of the properties such as real
18 property taxes, insurance and tenant improvements and leasing conditions. Pursuant to the
19 loan documents, these reserve accounts constitute additional security for the Lenders. The
20 Lenders should be allowed to protect their collateral and maintain possession of these
21 accounts for use by the Debtors when needed. In no event should the Debtor be allowed to
22 obtain possession of these funds and use such funds for any other purposes.

23     30.    Contrary to the Debtors' unsupported assertions, all of the excess cash
24 received during the forbearance agreement have been held in separate accounts and have
25 not been commingled with funds from any other loan.
26 / / /
27 / / /
28 / / /

IR01DOCS484913                                        7

DECL. SULSKY ISO OPPOSITION TO EM. MTN RE
USE OF CASH COLLATERAL

1     I declare under penalty of perjury under the laws of the United States of America
2 and the State of Florida that the foregoing is true and correct and that this Declaration was
3 executed this 18th day of April, 2011, at Miami Beach, Florida.

4
5                                     DMITRY SULSKY
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Bryan Cave LLP
3161 Michelson Drive, Suite 1500
Irvine, California 92612-4414

IR01DOCS484913         8         DECL. SULSKY ISO OPPOSITION TO EM. MTN RE USE OF CASH COLLATERAL